<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| QUAKERBRIDGE EARLY LEARNING LLC, <br><br> Plaintiff, <br><br> v. <br><br> SELECTIVE INSURANCE COMPANY OF NEW ENGLAND, et al., <br><br> Defendants. | Civil Action No. 20-7798 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendants Selective Insurance Company of New England ("Selective") and Selective Insurance Group, Inc.'s (collectively, "Defendants") Motion to Dismiss Plaintiff Quakerbridge Early Learning LLC's ("Plaintiff") Complaint. (ECF No. 8.) Plaintiff opposed (ECF No. 10), and Defendants replied (ECF No. 15). Defendants also submitted supplemental authority in support of their Motion. (ECF Nos. 17, 18.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion to Dismiss is granted.

## I.      BACKGROUND

Plaintiff is a daycare center located in Hamilton Township, New Jersey. (Compl. ¶ 8, ECF No. 1.) Defendants are insurance companies headquartered in New Jersey.[1] (*Id.* ¶¶ 10–11.) From July 21, 2019 through July 21, 2020, Selective insured Plaintiff for business interruption losses, including "business personal property, business income, special business income, and professional business income" losses (the "Policy"). (*Id.* ¶¶ 12–13, 16, 18.) According to Plaintiff, the "Policy is an all-risk policy, insofar as it provides that covered causes of loss under the [P]olicy means direct loss or damage unless the loss is specifically excluded or limited in the Policy." (*Id.* ¶ 21.)

On March 9, 2020, in light of the ongoing COVID-19 pandemic, New Jersey Governor Phil Murphy "issued a Proclamation of Public Health Emergency and State of Emergency, the first formal recognition of an emergency situation in the State of New Jersey[.]" (*Id.* ¶ 52.) Governor Murphy subsequently issued orders requiring non-essential businesses to cease operations and close all physical locations. (*Id.* ¶¶ 53–54.) Furthermore, the orders required "all daycare facilities to close except those that met stringent measures and [were] offering services to children of essential workers." (*Id.* ¶ 55.) Plaintiff complied with these orders and suspended its business operations. (*Id.* ¶¶ 62–63, 74–75.) Plaintiff asserts that its "compliance with [the] mandates resulted in . . . business losses, business interruption[,] and extended expenses of the nature that the Policy covers and for which [its] reasonable expectation was that coverage existed in exchange

---

[1] Selective is a subsidiary of Selective Insurance Group, Inc. (Compl. ¶ 9; *see also* Defs.' Moving Br. 1 n.1, ECF No. 8-1.) Defendants maintain that Selective Insurance Group, Inc. "is a publicly-traded insurance holding company that is not authorized to underwrite insurance and did not issue the" insurance policy in question. (Defs.' Moving Br. 1 n.1.) Defendants, accordingly, assert that Selective Insurance Group, Inc. "is not a proper defendant and the claims against it should be dismissed." (*Id.*) Moreover, the Commercial Policy Common Declaration attached to Plaintiff's Complaint does not appear to include Selective Insurance Group, Inc. as an insurer. (*See generally* Commercial Policy Common Decl., Ex. 1 to Compl., ECF No. 1-2.) The Court, therefore, will refer to Selective as the singular Defendant throughout this Memorandum Opinion. It declines, however, to address whether Selective Insurance Group, Inc. is, in fact, a proper defendant in the instant action.

for the premiums paid." (*Id.* ¶ 86.) Plaintiff, consequently, submitted a claim for business losses pursuant to the Policy, but Selective rejected the claim, "contending, *inter alia*, that Plaintiff did not suffer physical damage to its property directly and . . . is not purportedly entitled to coverage for the losses and damages claimed." (*Id.* ¶ 14.)

On June 25, 2020, Plaintiff filed the instant action on behalf of itself and a class of child care centers insured by Selective "who have been denied business interruption coverage for lost income and/or extended expenses as a result of Civil Authority Orders issued in response to the COVID-19 pandemic." (*Id.* ¶ 65.) Plaintiff and the class seek a judicial declaration that, *inter alia*, (1) Governor Murphy's orders "trigger[ed] coverage under the Policy"; (2) "the Policy provides coverage to Plaintiff for any current and future closures in New Jersey due to physical loss or damage directly or indirectly from the" COVID-19 pandemic; and (3) "that the Policy's exclusions for virus and bacteria do not apply to the circumstances presented in the lawsuit and the kind and types of damages and losses suffered by Plaintiff." (*Id.* at 36.)

## II.   **LEGAL STANDARD**

Rule 8(a)(2)[2] "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When analyzing a Rule 12(b)(6) motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*,

---

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

578 F.3d 203, 210 (3d Cir. 2009). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me[.]" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Finally, "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Third Circuit, however, has held "that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."[3] *Id.*

## III.  DISCUSSION

Selective notes that the Policy includes an "Exclusion of Loss Due to Virus or Bacteria" (the "Virus Exclusion"). (Defs.' Moving Br. 4.) The Virus Exclusion provides that Selective "will not pay for loss or damage *caused by or resulting from any virus*, bacterium[,] or other microorganism that induces or is capable of inducing physical distress, illness[,] or disease." (*Id.*

---

[3] Here, Plaintiff's claims are based on the Policy. (*See generally* Compl.) Plaintiff, however, did not attach a copy of the Policy to its Complaint. Selective attached the Policy in its entirety. (*See generally* Policy, Ex. A to Defs.' Mot., ECF No. 8-2.) Plaintiff does not contest the accuracy of the Policy. The Court, therefore, considers the well-pleaded facts in the Complaint and its attachments, as well as the Policy provided by Selective.

(emphasis in original); *see also* Policy 91.) Selective argues that "[a] reasonable policyholder could not read the Virus Exclusion and conclude that its policy covered losses 'caused by or resulting from'" COVID-19. (Defs.' Moving Br. 9.) Selective, therefore, maintains that the Virus Exclusion applies to Plaintiff's claims related to Governor Murphy's COVID-19 orders and, accordingly, moves to dismiss the Complaint for failure to state a claim. (*Id.* at 4–5.)

In opposition, Plaintiff argues that "[t]he plain language of the [Virus Exclusion] clearly contemplates scenarios involving temporary contamination of a property, such as with E. coli, salmonella, or 'listeria bacteria in milk,' which are relatively common." (Pl.'s Opp'n Br. 18, ECF No. 10.) According to Plaintiff, the Virus Exclusion's plain language does "not contemplate a worldwide pandemic of a novel coronavirus that results in statewide shutdown orders." (*Id.*) Moreover, Plaintiff maintains that its "business income loss was also caused by [Governor Murphy's] civil authority [o]rders, *not solely* by" COVID-19. (*Id.* at 16 (emphasis in original) ("There is no exclusion in the [P]olicy for civil authority orders that were entered due to a *pandemic*." (emphasis in original)).) Plaintiff asserts that "[w]hen civil authority coverage is invoked, [Selective] would pay for Plaintiff's business income loss or extra expense caused by the civil authority [o]rders, *not* the actual damage to surrounding property caused by the virus which prompted the civil authority [o]rders." (*Id.* at 17 (emphasis in original).) Finally, Plaintiff contends that the Virus Exclusion is "ambiguous, raising questions as to its intended meaning, or even whether its approval was obtained using false or misleading statements." (*Id.* at 21.) Plaintiff, accordingly, argues it is premature for the Court to determine whether the exclusion applies in the instant matter. (*Id.* at 22.)

"An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010). "In attempting to discern the meaning of a provision in an insurance contract,

the plain language is ordinarily the most direct route." *Chubb Custom Ins. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008). "If the plain language of the policy is unambiguous," the Court should "not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1075 (N.J. 2016) (internal quotation marks omitted) (quoting *Chubb*, 948 A.2d at 1289). Finally, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 997 A.2d at 996 (quoting *Princeton Ins. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997)).

Here, the Virus Exclusion provides that Selective "will not pay for loss or damage *caused by or resulting from any virus*, bacterium[,] or other microorganism that induces or is capable of inducing physical distress, illness[,] or disease." (Policy 91 (emphasis added).) Although Plaintiff maintains that the plain language of the Virus Exclusion is ambiguous, "a significant number of courts, both in [the Third] Circuit and across the country, have analyzed virus exclusion clauses that were either identical or highly similar to the one in Plaintiff's Policy, and consistently reached the same conclusion"—that the Virus Exclusion bars coverage. *Del. Valley Plumbing Supply, Inc. v. Merchs. Mut. Ins.*, No. 20-8257, 2021 WL 567994, at *4 (D.N.J. Feb. 16, 2021) (collecting cases). For example, in *Causeway Automotive, LLC v. Zurich American Insurance Co.*, No. 20-8393, 2021 WL 486917, at *2 (D.N.J. Feb. 10, 2021), the district court addressed a virus exclusion clause identical to the Virus Exclusion presently at issue. There, the plaintiffs argued that their policy's virus exclusion clause was ambiguous and susceptible to multiple meanings, including an interpretation that the exclusion bars "coverage caused by a virus actually present at the insured premises or that has infected the insured's employees." *Id.* at *5. The court, however, held that the exclusion

6

> plainly provide[d] that [d]efendant will not cover any loss caused by "any virus . . . or other microorganism that induces or is capable of inducing physical distress, illness, or disease." The provision in no way suggests that the virus must be present at the insured property for the exclusion to apply. Indeed, to accept [p]laintiffs' interpretation would require the [c]ourt to add additional language that does not appear in the [p]olicy.

*Id.* (citation omitted). The court also rejected the plaintiffs' argument that their virus exclusion clause did not apply because their injuries were caused by Governor Murphy's orders, not COVID-19. *Id.* at \*6 ("In that regard, the 'but for' cause of [p]laintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because of the virus.").

The Court finds no reason to deviate from this growing line of recent opinions and finds that the Virus Exclusion clearly and unambiguously bars coverage for Plaintiff's claims. *See, e.g.*, *Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-14860, 2021 WL 1153171 (D.N.J. Mar. 26, 2021); *Downs Ford, Inc. v. Zurich Am. Ins.*, No. 20-8595, 2021 WL 1138141 (D.N.J. Mar. 25, 2021); *Colby Rest. Grp., Inc. v. Utica Nat'l Ins. Grp.*, No. 20-5927, 2021 WL 1137994 (D.N.J. Mar. 12, 2021). As Plaintiff's Complaint notes, COVID-19 is a highly contagious and deadly virus. (Compl. ¶¶ 46, 81.) Moreover, the orders issued by Governor Murphy would not have been enacted but for the pandemic. (*See, e.g.*, Executive Order No. 104, Ex. 3 to Compl., ECF No. 1-4.) Finally, the Virus Exclusion clearly provides that Selective "will not pay for loss or damage *caused by or resulting from any virus*, bacterium[,] or other microorganism that induces or is capable of inducing physical distress, illness[,] or disease." (Policy 91 (emphasis added).) While the Court is sympathetic to the struggles Plaintiff and businesses throughout the country have faced during the COVID-19 pandemic, it may not ignore the plain language of the Policy,

nor "rewrite the contract for the benefit of either party." *Del. Valley Plumbing*, 2021 WL 567994, at *7. The Court, accordingly, grants Defendants' Motion to Dismiss.[4]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court finds that the Virus Exclusion bars Plaintiff's claims, the Court will not address the parties' arguments regarding physical loss or damage under the Policy. Moreover, the Court is unpersuaded by Plaintiff's argument that discovery is necessary to determine whether regulatory estoppel prevents enforcement of the Virus Exclusion. (Pl.'s Opp'n Br. 19–21.) Not only does the Complaint fail to allege regulatory estoppel, (*see generally* Compl.), but Plaintiff's speculative argument "fails to describe the dimensions or elements of a regulatory estoppel argument under New Jersey law, and cites to only one New Jersey case that applies regulatory estoppel[.]" *Del. Valley Plumbing*, 2021 WL 567994, at *5.